Good morning, your honors. Todd Burns on behalf of Appellant Gwendolyn Jones. First I want to address the vindictive prosecution issue. Government counsel admitted in the district court and the government counsel on appeals also admitted that the government sought to punish Ms. Jones for proceeding with two rights that she had. I'm not sure. I want to clarify. Are you saying that the government specifically used the word punish? Are you saying the government stated certain things about its recommendations? Punish, in this context, is pretty strong. Well, as an initial matter, government counsel in the district court stated if Ms. Jones proceeds with a breach claim, we will be seeking a much higher sentence. Yeah, but that's the legal question. It isn't a punishment. That's what they said, right? They threatened to seek a much higher sentence if she proceeded with her legal right to litigate the breach issue. And they did. And they did suggest a higher sentence. They made good on that threat. But she didn't get the higher sentence. Well, that's true. What she got was less than even her plea bargain called for. That's – well, that's true, although arguably the plea bargain – what the plea agreement says is that the government will recommend the low end of the guideline range found by the district court. That's a separate question. But if we find – if we find that she breached her plea agreement by virtue of these phone calls, assume just for the sake of discussion that we uphold the district judge on that point, then they are relieved of their obligation of recommending the low end of the guideline, are they not? That's true. Okay. So then if that's what occurred, they may have engaged in vindictive prosecution. Maybe they shouldn't have – in fact, I strongly suspect they shouldn't have threatened a higher sentence. But she didn't get the higher sentence. That's correct. I think there are – you can separate the two issues, as Your Honor is pointing out. If they're at 37 months and they say if she requests more, we're going to seek a dramatically higher – if she litigates the breach issue, we're going to seek a dramatically higher sentence. That's still vindictive. So that's a separate issue, I think, as Your Honor is recognizing. The question is, I think, well, what is the harmless error analysis in this context? And in the context of the analogous situation, which is breach of a plea agreement, there is no harmless error analysis. And that's in United States v. Mondragon, which is 228F3rd.978.981, which is a Ninth Circuit case of 2000. There's also a similar site in United States v. Camarillo-Tejo, which is 236F3rd.1024.1028. And I will 28J both those cases. But what they say in those cases is there's no harmless error analysis when the government breaches a plea agreement. And I think it's analogous in this situation. In a plea agreement context, the government shouldn't be recommending something that it's not supposed to be recommending. Well, but I have a problem, because somehow we've slipped off here, and maybe I don't understand the case. If the phone calls caused a breach, the phone call threats caused a breach of the agreement, the agreement itself says that if the – Ms. Jones does breach the agreement, then the government was free to seek any lawful sentence. And so it relieved the government. Why can't they say, I want more? It doesn't really matter. When she breached the agreement, she'd go by the terms of the agreement. I don't even see how this has anything to do with vindictive prosecution. It's a contractual matter at that point. Well, one of the things that I'd like to get to later is, according to plain language, I don't think that she wasn't breached. But assuming that she – Whoa, whoa, whoa. You mean we should start now first and determine whether she was in breach? She was found to be in breach by the judge. So you're saying the judge flat out said so. So you're saying that that was clearly erroneous, an error of law? What are we saying? Well, I think it was – as an initial matter, it's an error in construing the language of the contract, which is really a legal question, so I think it would be de novo review. Then there's the issue of whether or not the statute was itself constitutional. So are you saying that this Court first should determine whether there was a breach or not? No. As a matter of fact, I think – The issue is vindictive prosecution. I think as Judge Silverman was implying in his statements earlier, that if you have a situation, okay, she's in breach, what has the government decided to do when it decides that she's in breach? The government has decided to recommend 37 months. That's the point that they're at based on her being in breach. Then they say – when I say, well, I think you're in breach in recommending this, and they say, well, look, we're recommending 37 right now, but if you litigate that breach issue, which Ms. Jones has every right to do, we're going to seek a sentence, a dramatically higher sentence of 7 to 8 months, which is totally incommensurate with what they sought from Ms. Hughes, who was identically situated on the government. That's another issue, but you're saying they can't even say those words. What's the value of the plea agreement that says if you breach, I can seek any lawful sentence? Okay. Assuming that the plea agreement allowed them to seek a different sentence based on Ms. Jones' breach. What the government decided to do after that all occurred was exercise that right and to seek 37 months. They only sought 78 months after she litigated the breach issue. And they said that's exactly what we're going to do. If you litigate that breach issue, which she has every right to do, we're going to seek to punish you by seeking a dramatically higher sentence, even though it's totally incommensurate with the similarly situated co-defendant, similarly situated with respect to the role, the base offense level, high-end, low-end acceptance. They both were alleged to make similar phone calls, although her co-defendant, her sister, made dramatically worse phone calls than Ms. Jones did. So the government is essentially saying we have two similarly situated people. We're punishing one dramatically. You're seeking to punish one dramatically for litigating the breach issue. And that's vindictiveness. Now, if the government had said she's in breach and because she's in breach, we're going to seek a sentence of 78 months, then if she's in breach and the government was entitled to this anticipatory breach, then that's a different matter. But what the government actually said was we're going to seek 37 months, but if she litigates the breach issue, then we're going to seek 78 months. Suppose the statute, the California statute, is constitutional. Okay. Let's just take that as a given. Let's assume for the sake of discussion it's constitutional. Does the evidence show that she breached the agreement? Was the judge clearly erroneous in finding that she committed that violation? Well, I think as an initial matter in interpreting the relevant part of the plea agreement that we're going to talk about the plea agreement. Forget the plea agreement for a second. Does her conduct constitute a violation of the statute if the statute is constitutional? No, I don't think it does because I think it's an initial matter that there was no showing of an intent to annoy. And what's interesting about that is the judge says, well, I find an intent to annoy. And why do I find that? And then he goes on to talk about some other things, which have nothing to do with evidence supporting intent to annoy. Well, what was she doing by that language? Trying to set up an HBO sitcom or something? I mean, have you ever seen language like that before? The language is terrible. No, no. It's not terrible. It's the way it's directed. It could have been very common language, but it was used pretty effectively. Well, I think the language is somewhat shocking. And having spent, you know, a couple of years representing Ms. Jones and knowing Ms. Jones, I was shocked to hear the language. I'm not shocked by the language. What I think I'm looking at is whether it's a threat. Now, maybe that's just general talk between these folks. Maybe they knew each other so well that that's the way they talked to each other. I don't know. And I don't know that either. What I can tell you is that knowing Ms. Jones, I was shocked to hear it. But I think given the context, and this is Ms. Fears, the woman who's supposedly being threatened, having an affair with Ms. Jones' sister while this individual is managed to have an affair with, Ms. Hughes' ex-husband, living in their household, it is very volatile context. Ms. Jones was upset, and she expressed that she was upset. When you look at, did she have an intent to annoy? She didn't have an intent to annoy. She was angry, and she was saying, I'm angry. She wasn't trying to annoy her. She was trying to tell her how she felt. Now, the second part of it was, was there a threat? And I think if you look, first of all, it's got to be a true threat for it to be punishable under constitutional law. There's got to be an intent, a serious intent, to communicate this intent to do physical violence. And I don't think there's any such thing. The only thing that is close is, if I see you again, I don't know what I'll do. But that doesn't really indicate a serious intent to do physical violence to someone, especially when you look at the fact that Ms. Jones is 55 years old. She has no history of, no criminal history, no history of any sort of violence. I mean, if you'd observed this woman for any period of time, you would know that she's not threatening to do violence to Ms. Spears. Ms. Spears, I don't know her exact age, but she was much younger. It wouldn't even be a fair fight. It would be ridiculous to threaten violence. It would be like me threatening Arnold Schwarzenegger that I'm going to do violence against him or something. It would be a fair fight. Well, if you're 57, it might be a good threat. But she doesn't have a gun. She's not having – that's just not who she is. And if we had had more – Well, that's your take on it. The judge had a different take on it. We didn't have an evidentiary hearing on that. I said, look, I want to present – if you're going to find that she violated the statute, I want to present witnesses that will go to her intent. So it will go to whether or not this is a true threat, things like that. And we didn't have a hearing on that. I think if she's going to be – Didn't this lady come in and testify? Yes. Ms. Pierce came in to testify. That was at the bond revocation hearing. At that point, there was no issue of did she violate any specific statute, what's the standard for that statute. But, I mean, the judge heard the recipient of the phone calls. That's true. But then if the issue is Ms. Jones' intent and he was going to find that she violated the statute – Ms. Jones could have testified then if she wanted to. But, again, when we had the revocation hearing, the judge said, I don't care. I don't need to hear any more witnesses because regardless of what else is going on here, she shouldn't be behaving this way when she's on – when she's on pretrial release. If it had been the issue of did she violate the statute, which wasn't the issue on that date, it became the issue later when the government claimed a breach based on that statute, I certainly would have put on Ms. Jones and I would have put on other witnesses that could have gone to the overall situation. Did you ever request it at that point? Excuse me? Did you ever request a hearing at that point? I requested it afterwards when it became an issue of whether or not she violated the statute. I said I want to put on witnesses on these issues. And that was denied. So I think I could have put Ms. Jones up there and she could express quite clearly what it was that she intended to accomplish and what she was doing. I think one of the things, if I may real quickly go to, is the provision of the plea agreement that we're talking about, which is set out in the opening brief on 36 to 37, because I think that there's a real obvious answer to the breach question, and that's the agreement says, this agreement is based on the understanding that the defendant has committed no other federal income tax crimes and that she will commit no additional criminal conduct before sentencing. Then it says if she engages in any criminal conduct between May 14th and May 17th, essentially, the government can seek a higher sentence. That is the specific term in there. There's no specific term saying if she engages in any criminal conduct up until the time of sentencing, the government can seek a higher sentence. I think the specific has to control over the general here. It's a fairly basic contract interpretation canon, and what the government wants to say is, well, the understanding that she won't engage in any other criminal conduct before sentencing, that understanding is a term, and it's not a term. It's ambiguous at best. Is an understanding a term of a plea agreement? It's ambiguous at best, and there are many things that cut against government. Drafted the plea agreement, and they're the government in this situation. Any ambiguities are construed against the government, and certainly whether or not an understanding is a term of the plea agreement is an ambiguity. All right. Thank you. Members of the Court, good morning. I'm John Hinton from the Department of Justice for the United States. I'd like to begin, if I may, by addressing what I perceive to be a real misunderstanding on the part of the defense as to the government's theory of vindictive prosecution or the absence thereof in this case. My concerns arise from the Rule 28J letter and from the reply brief, and indeed from remarks I just heard. We are not advancing an argument that it is permissible for the government to behave vindictively only because such behavior would occur pre-trial or prior to the resolution of the trial. I don't believe that that could possibly be a fair reading of the position we argued in our brief. We're arguing, Borden, Kircher, and Goodwin, and the Ninth Circuit progeny of those decisions, that the timing of the conduct in question and the context, specifically plea negotiations, are critical factors to be considered, and that given the facts of this case, the very explicit, undeniable threat to up the ante with sentencing recommendations does not support an inference of vindictiveness because of when it occurred and because of the context in which it occurred. And absent such an inference, there is insufficient evidence to support a finding of vindictiveness, and the district court properly rejected the motion for dismissal or for dismissal of the prosecutor. So what's the significance of timing? That the government, after plea, can do anything it wants? Is that what you're saying? No, I'm not, Your Honor. In this case, we're after plea, after the ink has dried on the agreement, but we're clearly not at the point where you could say that the deal was sealed because the government hadn't moved for dismissal of the remaining counts. The defendant hadn't been sentenced. There had been no judgment. We were still in a fluid situation, and especially given that the defendant made clear her intention to want to rescind the agreement and undo it all, I think that we are functionally right where Goodwin is. We're in plea negotiations, and we're pretrial. So most assuredly, we're not arguing that the government can do whatever it wants once the agreement is signed. Our position is that this is what happened in this case is functionally the same as the government threatening to apply a sentencing enhancement that otherwise it wouldn't in order to obtain a guilty plea or threatening a superseding indictment with far more drastic potential consequences in order to obtain a guilty plea. Here, we're trying to preserve the guilty plea. And the threat, therefore, doesn't occasion an inference that it was vindictive or malicious. Let me tell you the problem I have with it, not the vindictive prosecution part of it, but it seems to me that the record shows, and it's undisputed, that these two people were acquainted with each other. This was not some nuisance call in the middle of the night, that they were former friends. Ms. Spears, the recipient of the call, and Ms. Jones? Right. Yes, Your Honor. And that Jones was calling to, not with the intent to annoy, but with the intent of expressing her disapproval of Spears' conduct. And although used vulgar language, Spears left another vulgar message on the other one's tape. I mean, it's not the language that seems to have been objectionable. I guess I'm troubled with the idea that one acquaintance cannot call up another acquaintance and give her a piece of her mind, which is what seems to me occurred here, rather than a classic obscene phone call with strangers or nuisance calls in the middle of the night, hang-up calls. This is somebody calling up and saying, I don't approve of your conduct, and said it with colorful language. Yes, Your Honor. I don't think that your interpretation of the events is in any way unreasonable. On the other hand, I don't think the district court's interpretation was unreasonable either, when you consider the calls were three, and there was a... The second two seemed irrelevant to me. I want my trays back as one, or I'll sue you or something to that effect. Well, I think the last one... Let the games begin. Yes, I think that that supports an inference that something's going to happen. Games. Well, that wasn't... Didn't Spears leave a message on Jones' tape that she was going to put her ass in prison or something to that effect? I think she did. Well... I think she did use... I listened to her tape yesterday, and it wasn't a model of clarity. They're going back and forth with these... Yes. Yes. I don't think that you're unreasonable, but I don't believe that the finding of the district court was clearly erroneous or unreasonable either. It's a sort of fuzzy gray area. There are aspects of this that, to be blunt, trouble me as well. You mentioned during Mr. Burns' presentation that you weren't sure that it was... I don't remember your exact words, Your Honor. You weren't sure about the propriety of cranking it up to 78 months at the very end. I think that what happened was within the four corners of the agreement and was within the legal bounds of what the government was entitled to do, but I agree. It's nothing that I would have done, and I think it backfired. I think you have a situation where you've got a very tenacious, able, relentless counsel representing Ms. Jones, and the district court even commented that there appeared to be some sort of chemistry between... I called it contentiousness. Yes. I think it happens frequently when you have zealous, persistent counsel. That also brought my attention. Being the district court recognized the contentiousness, and he said, I've got to put that aside and look through it. He seems to have gone through the vindictiveness or what happened based upon counsel and their interactions in the normal course of this. But what counsel brought out was the fact that the prosecutor said, if you contest and bring on my breach because of my comment that I'm going to raise it, then I'm going to raise to the top of the scale, I'm going to charge whatever, recommend whatever sentence. That's what he bases his vindictiveness on and the vindictive prosecution on. Now, the judge seems to say, well, there's a lot of contentiousness here between counsel. Counsel says, you're trying to say that this is under the case law,  but are you saying that because of the claimed breach of the contract, that then the contract, what, disappeared? Because the judge later says, I'm going to go under the terms of the contract. When he's sentenced, he didn't accept your recommendations, but he went under the terms of the contract. That kind of confused me because first you have a breach of the contract, government's going to do whatever they want under the default clause, and then a judge says, well, I'm going to use the contract. So how do you feel? I don't find any case that fits this. I don't either, but I do think that it remains closely analogous to Goodwin and the progeny of Goodwin. I haven't found one that says once the contract has been executed, the government's ability to see it through to the end is diminished from the way it would be able to obtain the contract. The court did find in December that the contract was still valid and in force, and the government very definitely did threaten to go from 38 months, 37 to 78, based on what it perceived as a threat to the viability of the contract. If you put that threat in a different point in the trial, in the case later on after the trial had commenced, would you think it would satisfy the law on vindictive prosecution? Goodwin and Bordenkircher and the Ninth Circuit progeny all talk about the ultimate resolution of the matter at trial, and then subsequent conduct, unilateral conduct by the government attacking valid attempts by the defense to undo the result of trial. So unless your hypothetical takes us into that situation, I think that, and we really don't even have to go that far here, it was so clearly questionable at the time the threat was made whether the agreement was going to survive the motion that I think it's functionally almost the equivalent of a threat that you either plead guilty or we're going to supersede. Am I on the right track that even whatever we think of this, they may have threatened to give her life in prison? I mean, she didn't get life in prison. She got less than what she bargained for. I'm having a hard time finding that this is. That's correct. But I also have to say that I am reluctant to invoke that fact as a reason not to find vindictiveness. I think that Mr. Burns is right that she was, if there was no breach, she was entitled to a recommendation. And I'm mindful of this Court's rather forceful pronouncement.  I think that the law is, if her phone calls did not constitute a violation of that California misdemeanor statute, assuming she didn't breach the agreement, then the prosecutor was obliged to stand up and say we recommend that she get 24 months. I think 30. Well. The low end. No, the low end. He gave a two-level departure. Yes. Correct. 24 to 30, the guy was obligated to stand up and say give her 24, Judge gave her 27. So if that's the case, then we'd have to send it back and say redo it and have the prosecutor stand up and recommend the low end. However, if we find that she did breach the plea agreement, that her phone calls, that the judge was correct in ruling that her conduct constituted a misdemeanor, that relieves the government of the obligation of standing up and making the low end recommendation, right? Right. And then that leaves us with it doesn't matter what the prosecutor may have threatened, she didn't get the, she didn't get it. If the judge had said, yeah, I'm going to give you 78 months, we'd have something to talk about. It wasn't vindictive and it doesn't matter because she didn't get it. Even if it were vindictive, it doesn't matter because she didn't get it. I feel fairly strongly that the conduct of the prosecutor ought to be vindicated here. Gotcha. But is, do you really have a harm question to vindictive prosecution? In other words, let's say that the conduct of the prosecutor was vindictive. Assume that. You don't have to agree with it, but just assume it. Is it any defense for the government to point out that she wasn't harmed by it? No. I don't believe it is. Okay. That's good. All right. We'll give you a minute. I think you're over your time. I have two points that Judge Silverman and Nelson were just touching on. I don't think there's a harmless error analysis. And I think it's because it's like a breach of a plea agreement sort of remedy, which the district court's kind of thoughts are polluted by the recommendation that shouldn't be made. It impugns the integrity of the process. But also, if we're going to look at was there a harm, I'm trying to convince the district court judge that he should go down. I recommend a six-month sentence. And I'm trying to say, look, the heartland of this case, when you consider everything, is way down here. The prosecutor is saying the heartland is up to 78 months. I think it's impossible to say that doesn't have an effect on a district court judge who's sitting there and listening to two sides argue for dramatically different sentences. I'd agree with you except you gave her a two-level departure. I mean, you won. Well, but I was looking for a lot more than two levels. And really, I mean, he gave her about three months off of what the government was going to recommend initially if he hadn't given any departure. I mean, you bargained for a 19, and he winds up going to a 17. Well, what might he have gone for if the prosecutor wasn't recommending 78 months? I mean, we must think that if the prosecutor gets up there and says, I want you to give her 78 months, she deserves 78 months, that that has some effect on the judge. But if you look at the breach of the plea agreement context, courts don't even look at that, whether or not it had an effect on the judge. They say, look, the prosecutor is supposed to recommend this, so we're going to put the prosecutor in front of the judge. I think the judge, though, is very interesting. Just before he pronounced the sentence, he recognized the contentiousness of counsel. He said, I'm going to look through this, and I'm going to look at this lady and what she did and what she deserves. He flat-out said that. He ignored both of you, very frankly. Actually, what he recognized was not the contentiousness of counsel. What he recognized was that government counsel's actions were motivated by animus towards defense counsel. No, that's not what he said in his transcript. I think it's at 272 of the record. I think that's fairly close to what he said. There's another thing I'd like to point out, which is as far as the district court's finding as to whether or not there was a violation of statute, I think it's very interesting to look at page 13 of my reply, which cites excerpt of record at 276, in which the judge says how he's making this finding. He says, well, basically, a rational jury could find that she's guilty. And I think there's probable cause for finding that she was guilty. That's not really quite like him saying, I found that she violated the statute. It's not even applying the proper standard to say that she violated the statute. It's just saying, well, a rational jury could find that. Well, maybe a rational jury could, but what did this court really find, seeing what the court saw as far as the witnesses? All right. Thank you. Thank you. Please just start. You will be submitted. And even though this is my swan song, I won't sing. How's that? We're in adjournment. Thank you.
judges: Brunetti, Tg Nelson, Silverman